# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Gregorio Mendoza-Ayala, Ruth
Ivonne Mendoza, and I.R.M.,

          Plaintiffs,

v.

Mike Pompeo, Secretary of State;
John Tavenner, Consul General, Ciudad
Juarez, Mexico; Chad Wolf, Acting
Secretary, Department of Homeland
Security[1]; Kenneth Cuccinelli, Acting
Director, United States Citizenship and
Immigration Services; William Barr, United
States Attorney General; and Christopher
Wray, Director, Federal Bureau of
Investigation,

          Defendants.

Civil No. 19-2522 (DWF/TNL)

**MEMORANDUM OPINION
AND ORDER**

## INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss. (Doc. No. 28.) In this case, Plaintiffs Gregorio Mendoza-Ayala ("Mr. Mendoza" or "Mendoza"), Ruth Ivonne Mendoza ("Ruth Mendoza"), and their daughter I.R.M. (together, "Plaintiffs") challenge the decision made by a consular officer to deny Mendoza's immigrant visa application on the grounds that he is ineligible for making a false claim to U.S. citizenship in 2005. In particular, Plaintiffs seek a declaratory judgment that Mendoza is

---

[1]    Chad Wolf is now Acting Secretary of the Department of Homeland Security and is substituted under Federal Rule of Civil Procedure 25(d).

entitled to a waiver of inadmissibility, that Mendoza mounted an affirmative defense to the allegation of making a false claim to U.S. citizenship, that Mendoza should be granted an immigrant visa, and that the denial of the visa violated Mendoza's due process rights, Ruth Mendoza's substantive due process rights and equal protection rights under the Fifth Amendment, and both Ruth Mendoza's and I.R.M.'s right to maintain family unity under the Fifth Amendment. Defendants move to dismiss on the grounds that the Court lacks subject matter jurisdiction, or alternatively for failure to state a claim, based on the doctrine of consular nonreviewability. For the reasons set forth below, the Court denies Defendants' motion.[2]

## BACKGROUND

Mr. Mendoza is a citizen of Mexico. He married Ruth Mendoza, a United States citizen, on September 20, 2014. (Doc. No. 1 ("Compl.") ¶ 41.) Mr. Mendoza and Ruth Mendoza have a daughter, I.R.M., also a United States citizen. (*Id*. ¶ 42.)

Mendoza attempted to enter the United States without inspection on April 14, 2005 through Laredo, Texas. (*Id*. ¶ 43.) At the time, Mendoza was sixteen years old, did not speak English, and had limited education in his home country. (*Id*.) Mendoza asserts that he attempted to enter the United States at the suggestion of friends and, after standing in line, was questioned by an officer. (*Id*.) Mendoza was not provided an interpreter.

---

[2] Defendants requested that all Defendants other than the Department of State and Consular Officer be dismissed because they had no authority regarding the decision to deny Mendoza's visa application. While it appears that Defendants' position is well-taken, the Court asks the parties to meet and confer and, if in agreement, submit a proposed order to the Court regarding the dismissals.

(*Id.*)  Mendoza claims that he did not understand the questions the officer asked or what he told the officer.  (*Id.*)  Mendoza also asserts that he did not present any documents to support his entry into the United States.  (*Id.*)  Mendoza was denied entry.  (*Id.* ¶ 44.)

In 2007, Mendoza entered the United States without inspection or admission.  (*Id.*)  While he was in the United States, Mendoza traveled to Minnesota to live with his brother.  (*Id.* ¶ 44.)  On September 20, 2014, Mendoza married Ruth Mendoza.  (*Id.*)  Ruth Mendoza became pregnant and gave birth to I.R.M. on September 1, 2015.  (*Id.*)

On April 28, 2015, Ruth Mendoza submitted a Form I-130 Petition for Alien Relative.  (*Id.* ¶ 45.)  On October 1, 2015, the petition was approved.  (*Id.*)  On December 7, 2015, Mendoza submitted a Form I-601A, Application for Provisional Unlawful Presence Waiver ("First I-601A") to the United States Citizenship and Immigration Services ("USCIS").  (*Id.* ¶ 46.)  USCIS denied the waiver on May 12, 2016, providing in part:

> The record shows that you have given false or misleading information to a U.S. Government official while applying for an immigration benefit or to gain entry or admission into the United States or that you have falsely represented yourself as a United States citizen.  USCIS has reviewed your case but has not made any formal findings or decisions regarding your admissibility to the United States or whether you are subject to other grounds of inadmissibility.  Based on the information noted above, however, USCIS has reason to believe that you may be found inadmissible by a Department of State consular officer at the time of your immigrant visa interview for a reason other than prior unlawful purpose.
> You may not appeal this decision or file a motion to reopen or reconsider this decision.  You may, however, file a new Form I-601A provided you meet the eligibility and filing requirements for the provisional unlawful presence waiver at the time of filing . . . .

(*Id.* ¶ 46 & Ex. B.)[3] Mendoza reapplied for the inadmissibility waiver in mid-July 2017. (*Id.* ¶ 47 & Ex. C ("Second I-601A").) In the application, Mendoza specifically addressed the ground of inadmissibility based on an alleged false claim to U.S. citizenship, and he submitted an affidavit attesting to his immaturity and lack of understanding during his attempt to enter the United States in 2005. (*Id.*)[4] For example, he stated that he was young, naive, and from a "tiny rural town in Mexico." (*Id.*) In addition, Mendoza stated that he did not speak English, and because he did not understand the questions being asked, he "answered yes to several questions without

---

[3] When Mendoza filed the First I-601A, 8 C.F.R. § 212.7(e)(4) (Waiver of certain grounds for inadmissibility) provided, in relevant part:

> Ineligible aliens: Notwithstanding paragraph (e)(3) of this section, an alien is ineligible for a provisional unlawful presence waiver under paragraph (2) of this section if: (i) USCIS has reason to believe that the alien may be subject to grounds of inadmissibility other than unlawful presence under section 212(a)(9)(B)(i)(I) or (II) of the Act at the time of the immigrant visa interview with the Department of State; . . .

In July 2016, USCIS amended 8 C.F.R. § 212.7(e), such that the new § 212.7(e)(4) eliminated the "reason to believe" ground.

[4] In this application, Mendoza cited to the U.S. State Department Foreign Affairs Manual ("FAM") as it relates to false U.S. citizenship claims, stating:

> (2)(U) A separate affirmative defense is that the individual was (a) ***under the age of 18*** at the time of the false citizenship claim; and (b) at that time ***lacked the capacity (i.e., the maturity and the judgment) to understand and appreciate the nature and consequences of a false claim to citizenship.*** The individual must establish this claim by the appropriate standard of proof (for applicants for admission or adjustment, "clearly and beyond doubt").

(Compl. ¶ 47, Ex. C (emphasis in original).)

4

knowing what they meant." (*Id.*, Ex. C at 67.) Mendoza also explained that it was entirely a verbal interaction, that he did not show any documents, and that he neither knowingly claimed to be a U.S. citizen nor had any idea that any false claim to U.S. citizenship would have such severe implications. (*Id.*) The USCIS approved the second waiver. (*Id.* ¶ 47 & Ex. E (approving provisional unlawful presence waiver).)[5]

In 2018, Mendoza applied for an immigrant visa through consular processing. (*Id.* ¶ 47.) Mendoza then left the United States to take part in a consular interview at the U.S. Consulate in Ciudad Juarez, Mexico on May 15, 2018. (*Id.* ¶ 48.) Mendoza alleges that at the interview, his waiver and immigrant visa were approved. (*Id.* & Ex. F ("Your visa has been approved.").) However, the very next day, Mendoza was informed that his immigrant visa was denied and that his application was incomplete. (*Id.* ¶ 48 & Ex. G.)

On July 2, 2018, Mendoza took part in a second consular interview, again in Ciudad Juarez, Mexico. (*Id.* ¶ 48.) This time, the consular officer denied the immigrant visa application. (*Id.*) Mendoza submitted an inquiry with the Department of State, requesting additional information on the visa refusal. (*Id.* ¶ 49.) The Department of State responded, explaining that Mendoza was found ineligible because the consular officer determined that Mendoza had made a false claim to U.S. citizenship to an immigration officer in 2005, and that Mendoza had not met the burden to establish the affirmative

---

[5] Plaintiffs allege that the waiver was approved based on Mendoza's meritorious defense to the false claim to U.S. citizenship. (Compl. ¶ 47.) Defendants argue that because, at this point, 8 C.F.R. § 212.7(e) no longer contained the "reason to believe" ground, USCIS did not consider that ground in adjudicating the Form I-601A, and thus did not make a determination regarding Mendoza's defense to the false claim of U.S. citizenship, or any other issue other than the basis of unlawful presence.

defense that either the false claim to U.S. citizenship had not been "knowingly made" or that Mendoza was under 18 and lacked the capacity to understand and appreciate the nature and consequences of a false claim to citizenship. (*Id*. & Ex. H.) The Department of State concluded that no error had occurred in the adjudication of Mendoza's application. (*Id*.)

In an effort to establish the affirmative defense that he did not have the age, maturity, or mental capacity to understand the harm of a false citizenship claim, Mendoza submitted supplemental materials to the U.S. Consulate. (Compl. ¶ 50 & Ex. I.) On October 3, 2018, the U.S. Consulate responded to Mendoza's inquiry. (*Id*. ¶ 50 & Exs. J, K.) The U.S. Consulate explained that Mendoza had been found to be ineligible at the July 2, 2018 interview because: (1) Mendoza had attempted to enter the United States by falsely declaring himself to be a United States citizen on April 15, 2005 at the Laredo, Texas port of entry in violation of INA § 212(a)(6)(C)(ii) ("6C2 violation"); and (2) Mendoza admitted under oath that he entered the United States without inspection in March 2007 and remained in the United States unlawfully until May 2018, making him inadmissible under INA § 212(a)(9)(B)(i)(II). (*Id*. & Ex. K.) Further, the U.S. Consulate explained that Mendoza's approved I-601A provisional waiver of unlawful presence inadmissibility did not apply to Mendoza's ineligibility due to a 6C2 violation. (*Id*.) In addition, the U.S. consulate found that Mendoza failed to establish "clearly and beyond doubt" his affirmative defense, namely that in 2005 he lacked the capacity to understand and appreciate the nature and consequences of a false claim to citizenship. (*Id*. & Ex. K.) Finally, in reviewing Mendoza's case and the supplemental submission, the U.S.

Consulate also found that during the immigrant visa interview and on his visa application, Mendoza knowingly denied material facts regarding 6C2 ineligibility even after being confronted with information in his immigration records. (*Id.*)

On October 17, 2018, counsel for Mendoza initiated another inquiry with the U.S. Department of State. (*Id.* ¶ 51 & Ex. L.) Mendoza argued that in his Second I-601A, he successfully demonstrated that he was both under the age of 18 and lacked the mental capacity and language skills to knowingly make a false claim of U.S. citizenship. On October 25, 2018, the Department of State responded, explaining that the consular officer considered Mendoza's affirmative defense and determined that Mendoza did not meet the burden of establishing that in 2005 he lacked the capacity to understand and appreciate the consequences of a false citizenship claim. (*Id.*)

Plaintiffs filed the present complaint on September 13, 2019. Plaintiffs seek a declaratory judgment that: (1) Mendoza is entitled to a waiver of inadmissibility; (2) Mendoza satisfied an exception to the alleged false claim to U.S. citizenship; and (3) denial of the visa violated Ruth Mendoza's substantive due process and equal protection rights, as well as her daughter's right to maintain family integrity, under the Fifth Amendment. Plaintiffs seek an order enjoining Defendants from refusing to grant Mendoza's immigration visa application.

## DISCUSSION

Defendants move to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or alternatively for failure to

state a claim, under the doctrine of consular nonreviewability[6], and, as a matter of law, because the visa denial was facially legitimate and bona fide.

To survive a motion under Rule 12(b)(1), the party asserting jurisdiction has the burden of proving jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). A Rule 12(b)(1) motion may challenge a plaintiff's complaint either on its face or on factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—that is, even if the allegations were true, they lack an essential element for jurisdiction—a court reviews the pleadings alone, and the court assumes the allegations are true. *Id*. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and weigh the accuracy of the allegations. *Id*.

Although Defendants submit declarations, they appear to bring a facial challenge. (Doc. No. 31 ("Defs.' Mem.") at 21 (stating that the "well-pleaded complaint" rule requires a plaintiff to state the basis for the court's jurisdiction on the face of the complaint).) Thus, the Court limits its review to the Complaint and its exhibits and those materials embraced by the Complaint, and the Court assumes that the allegations in the Complaint are true. *Osborn*, 918 F.2d at 729 n.6; *see also Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the

---

[6] Defendants maintain that the doctrine of consular nonreviewability should be properly understood as a jurisdictional matter. (Doc. No. 31 at 2 n.2.)

8

complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.[7]

Defendants' main argument is that this case should be dismissed under the doctrine of consular nonreviewability. The doctrine of nonreviewability "holds that a

---

[7] The Court declines to convert the present motion to one for summary judgment.

consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). The doctrine applies in light of the political nature of visa determinations and of the lack of express statutory authorization of judicial review of consular officers' actions. *Id.*; *see also Bustamante v. Mukasey*, 531 F.3d 1059, 1060 (9th Cir. 2008) ("[O]rdinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review."). However, a limited exception to the doctrine applies where the denial of a visa implicates the constitutional rights of a United States citizen. *Bustamante,* 531 F.3d at 1061 (citing *Saavedra Bruno*, 197 F.3d at 1163 (additional citations omitted)). The exception is rooted in *Kleindienst v. Mandel*, 408 U.S. 753 (1972). In *Mandel,* the Supreme Court engaged in a limited judicial inquiry into whether a consular officer's decision was based on a "facially legitimate and bona fide" reason. *Mandel*, 408 U.S. at 770. The doctrine of consular nonreviewability applies to decisions that implicate any interest United States citizen spouses may have in their alien spouse's visa application, so long as the Government provides a "facially legitimate and bona fide reason" for its decision to deny a visa. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018) (noting the "circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. Citizen").

Plaintiffs invoke an exception to the doctrine of consular nonreviewability, arguing that the doctrine does not apply because the government violated Plaintiffs' constitutional rights based on the bad faith conduct of the consular officer in Ciudad Juarez, Mexico. Specifically, Ruth Mendoza and I.R.M. argue that Ruth Mendoza's right

10

to marry and cohabit in the United States, as well as I.R.M.'s right to a parent-child relationship, are both recognized as "Constitutional liberty interest[s] to which the doctrine of consular nonreviewability necessarily bows." (Doc. No. 44 at 9-10.) In that same vein, Plaintiffs argue that the reason offered for Mendoza's visa denial were not "facially legitimate and bona fide."[8] In addition, Plaintiffs argue that the Court may actually engage in a more searching inquiry upon "an affirmative showing of bad faith" from a consular officer. In support, Plaintiffs cite to a concurring opinion in *Kerry v. Din*, 135 S. Ct. 2128, 2141 (2015), which notes that absent an affirmative showing of bad faith on the part of the consular officer—that is plausibly alleged with sufficient particularity—*Mandel* instructs the court not to "look behind" the "facially legitimate and bona fide" reason. Plaintiffs maintain that their asserted claim of a constitutional violation based on the bad faith actions of the consular officer makes this decision reviewable. Further, Plaintiffs argue that under the standard of "facially legitimate and bona fide reason," judicial review is proper because the officer's decision is challenged as an incorrect statutory interpretation. Specifically, Plaintiffs argue that the consular officer incorrectly interpreted 9 FAM 302.9-5(B)(I)(U).

---

[8] Plaintiffs appear to argue, more broadly, that consular nonreviewability does not apply to any constitutional claim. *See, e.g.*, *Lihua Jiang v. Clinton*, Civ. No. 08-4477, 2011 WL 5983353, *4 (E.D.N.Y. Nov. 28, 2011) ("This suggests that [the holding in *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 126 (2009)]—that consular nonreviewability does not apply to constitutional claims—is true of *all* constitutional claims. . . . Therefore, the court concludes that consular non-reviewability is not applicable when any plaintiff who possesses cognizable constitutional rights alleges that a visa denial implicated those rights."). The Court need not decide that issue at this time.

In their reply, Defendants contend that the consular officer found Mendoza ineligible for a visa for making a false claim to U.S. citizenship to an immigration officer in 2005 and that Mendoza had not met his burden to establish the affirmative defense that either the false claim to U.S. citizenship had not been "knowingly made" or that Mendoza lacked the requisite capacity to understand and appreciate the nature and consequences of a false citizenship claim. (Doc. No. 49 at 8.) Further, Defendants assert that since Mendoza was found ineligible, his provisional waiver of inadmissibility was revoked automatically. (Compl. ¶ 49 & Ex. H at 1.) Defendants contend that Plaintiffs submitted additional evidence and the consulate responded to each inquiry. Defendants argue that the visa denial here was facially legitimate because the consular officer provided citations to valid grounds of inadmissibility and a full explanation, and as a result that decision is not subject to judicial review.

While the provision by the government of a "facially legitimate and bona fide reason" for denying Mendoza's visa application would generally be sufficient, Plaintiffs have cited to authority here that convinces the Court that a more searching inquiry may ultimately be appropriate. Specifically, Plaintiffs have plausibly alleged that the consular officer who denied Mendoza's visa did so in bad faith.[9] Plaintiffs allege that Mendoza attended two interviews with the U.S. Consulate in Ciudad Juarez. After his first

---

[9] Other courts have acknowledged that a showing of bad faith might warrant a more searching judicial inquiry, but found that the facts of the particular cases before them failed to meet the standard. *See, e.g.*, *Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019) ("Making an 'affirmative showing of bad faith' requires a plaintiff to point to something more than an unfavorable decision."); *Alharbi v. Miller*, 368 F. Supp. 3d 527, 554 (E.D.N.Y. 2019).

interview, the consular officer approved his visa, but that approval was almost immediately reversed *sua sponte* by a notice claiming that Mendoza's application was incomplete and, therefore, denied. The denial apparently came after the results of a search of the Consular Consolidated Database ("CCD") revealed fingerprint records from Mendoza's entry attempt in April 2005 and that Mendoza provided a different birth date.[10] Defendants claim that these records demonstrate that Mendoza had made a false claim to citizenship in 2005. However, when the consular officer requested that Mendoza come in for a second interview, the officer did not request additional documents from Mendoza. Moreover, Mendoza maintains that he was not asked about the

---

[10]  It appears that the consular officer did not review the fingerprint records until after Mendoza's first interview and after the officer initially approved the visa request. This all begs the question of why these records were not reviewed previously and, in particular, before Mendoza's waiver application was granted. Or, if the records were reviewed, why they were not revealed to Mendoza earlier. In addition, the relevance of the fingerprint records is unclear, considering that Mendoza did not hide that he tried to enter in 2005 and specifically addressed the 2005 entry when applying for a waiver. Defendants claim that the fingerprint results show that Mendoza made a false oral claim to U.S. citizenship, but fail to adequately explain how the fingerprint records, alone, would indicate that Mendoza made an oral false claim of U.S. citizenship.

All of these facts make the timing of the USCIS's decision to deny Mendoza's visa highly questionable. Notably, the USCIS approved Mendoza's second waiver request, after Mendoza submitted evidence of his immaturity and lack of understanding in 2005. The USCIS was fully aware that Mendoza attempted entry in 2005. And the approval of Mendoza's waiver application cleared the way for Mendoza to apply for an immigrant visa through consular processing, which in turn required Mendoza to leave the United States to participate in a consular interview at the U.S. Consulate in Ciudad Juarez, Mexico. And while the consular officer initially approved the visa, that decision was almost immediately reversed. So, after spending years in the United States building a life and a family, Mendoza has not been able to return. The timing of the denial, and the late-coming revelation of the fingerprint records, is suspect and, even if ultimately permissible under the law, casts the process by which the government handled Mendoza's immigration case in a light highly unfavorable to the government.

13

fingerprint records during his second interview.[11] Mendoza further maintains that he was not given an opportunity to confront the records and clarify what happened in 2005. In addition, Mendoza maintains that he was informed about the false citizenship claim that resulted in the denial of his visa *after* the interview. Mendoza argues that the concealment of records that resulted in the denial of his visa and the falsification of records to make the process resulting in his visa denial seem legitimate demonstrate a bad faith violation of Plaintiffs' due process rights. Mendoza further argues that the consular officer's decision is contrary to the process and analysis provided in the U.S. State Department FAM. Namely, Mendoza points out that the FAM provides that an individual "under the age of 18 at the time of the false citizenship claim" and who "lacked the capacity (i.e., the maturity and the judgment) to understand and appreciate the nature and consequences of a false claim to citizenship" has an affirmative defense against the charge of inadmissibility. *See* 9 FAM 302.9-5(B)(1)(U).

The Court concludes that, at this early stage of litigation, Plaintiffs have sufficiently alleged a plausible act of bad faith by the consular officer. Based on the allegations in the Complaint, it appears that the consular officer denied a visa on grounds upon which Mendoza was not given an opportunity to respond, failed to consider relevant evidence, and perhaps withheld the existence of relevant documents that were ultimately

---

[11] According to the declaration of the Attorney Advisor Evangeline Howard (who conducted the CCD search) (Doc. No 33), Mendoza was questioned "about the fingerprint results showing that [Mendoza] had previously made an oral false claim to U.S. citizenship at the border." (*Id*. ¶ 6.) Mendoza denies this and even asserts that it is a "fictional take" and amounts to a falsification of records. The declaration is embraced by the Complaint and the Court will consider it.

14

used to deny the visa.  Plaintiffs allegations point to more than an unfavorable decision.  The Court is particularly troubled by the consular officer's apparent disregard of evidence that in 2005, Mendoza was only 16 years old, lacked education, and did not speak English, to reach the conclusion that Mendoza made an actual knowing false claim to citizenship, despite a demonstrated lack of maturity and judgment to understand the consequences of such a claim.  In addition, in 2005, Mendoza was questioned in English without an interpreter, making it appear patently unreasonable to conclude that any claim of citizenship, *if* there was one, was made knowingly.  That the consular officer allegedly relied on fingerprint records is met with Plaintiffs' assertion that Mendoza was not asked about the records during his interview.  Accordingly, the Court concludes that the allegations thus far raise the distinct possibility that this case falls within the exception to the doctrine of consular nonreviewability.  Accordingly, the Court finds that is has subject matter jurisdiction.

The parties only briefly address the issue of whether a United States citizen has a marriage-based liberty in his or her spouse's visa application, or whether I.R.M. has any liberty interests in maintaining family unity.  In addition, the parties touch on various other significant legal issues that the Court will have to grapple with at a later stage of litigation, after the issues have been more thoroughly addressed by the parties.  For the time being, Plaintiffs' Complaint survives Defendants' motion to dismiss.

## CONCLUSION

The Court denies Defendants' motion to dismiss.  The Court notes that there remain many significant, and potentially dispositive, legal issues in this case that will

require consideration and resolution at a later stage.  The Court finds it dispiriting that the government would choose to use its resources to deny a visa to a person who has worked and lived in the United States for years, is a primary provider for his family, was initially granted a waiver of inadmissibility, and has both a U.S. citizen wife and a U.S. citizen daughter based on a finding that Mendoza attempted to enter the country roughly 15 years ago, when he was a minor and spoke no English.  It would seem that the government, which proclaims to value family, would choose to allow this family to stay together.  The Court, perhaps naively, hopes that the government might find a way to work this out.

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED THAT**:  Defendants' Motion to Dismiss (Doc. No. [28]) is **DENIED**.

Dated:  June 9, 2020                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge